THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES AVIATION UNDERWRITERS, INC., a New York corporation, individually and on behalf of United States Aircraft Insurance Group,<br><br>Plaintiff,<br><br>vs.<br><br>NABTESCO CORPORATION, a Japanese company, f/k/a TS Corporation and Teijin Seiki Company, Ltd.; NABTESCO AEROSPACE, INC., a Washington corporation; f/k/a Teijin Seiki America, Inc.; DOES 1 – 100, inclusive,<br><br>Defendants. | No.  C10-821Z<br><br>ORDER |

THIS MATTER comes before the Court on defendants' motion for summary judgment, docket no. 25.  Having reviewed the papers filed in support of, and opposition to, defendants' motion, the Court GRANTS the motion.

ORDER - 1

## I. BACKGROUND

The facts in this case are undisputed. On or about March 29, 1990, defendants manufactured an aircraft nose landing gear actuator, with serial number 339 ("Actuator 339"). On October 24, 1990, Cessna Aircraft Company ("Cessna") installed Actuator 339 on Cessna Aircraft 550-0653 ("Aircraft 550-0653"). Johnson Decl., Ex. A, docket no. 27. Cessna sold Aircraft 550-0653 to Roseburg Forest Products Company on October 30, 1990. Id. at Ex. B.

At some later date, someone removed Actuator 339 from Aircraft 550-0653, and the component found its way to Midwest Jet Corporation, which overhauled Actuator 339 on December 6, 2006. Hickey Decl., Ex. A, docket no. 28. Thereafter, on April 2, 2007, Actuator 339 was installed on Aircraft 560-0150 ("Aircraft 560-0150"). Id. at Ex. B. Aircraft 560-0150 was originally sold by Cessna to its first purchaser on December 30, 1991. Williams Decl., Ex. 3, docket no. 30.

On August 17, 2009, Aircraft 560-0150 was damaged when its nosegear collapsed during landing at an airport near Long Beach, California. Compl. at ¶ 10, docket no. 1. Plaintiff has sued defendants alleging that the crash was caused by manufacturing and design defects in Actuator 339.[1] Id. at ¶ 17.

---

[1] The complaint also alleges that several other components caused or contributed to the accident, see id. at ¶ 17, but the only allegedly defective component that the defendants manufactured is Actuator 339. Tagaki Decl. at ¶ 11, docket no. 26.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. See F.D.I.C. v. O'Melveny & Meyers, 969 F.2d 744, 747 (9th Cir.1992), rev'd on other grounds, 512 U.S. 79 (1994).

### B. General Aviation Revitalization Act

The issue before the Court is whether the 18-year statute of repose contained in the General Aviation Revitalization Act of 1994 ("GARA") bars plaintiff's claims in this lawsuit. GARA provides, in relevant part, as follows:

> (a) In General – Except as provided in subsection (b),[2] no civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft may be brought against the manufacturer of the aircraft or the manufacturer of any new component, system, subassembly, or other part of the aircraft, in its capacity as manufacturer if the accident occurred-
>
>> (1) after the applicable limitation period beginning on-
>>
>>> (A) the date of delivery of the aircraft to its first purchaser or lessee, if delivered directly from the manufacturer; or . . .
>>
>> (2) with respect to any new component, system, subassembly, or other part which replaced another component system,

---

[2] None of the exceptions set forth in GARA subsection (b) are applicable in this case.

>subassembly, or other part originally in, or which was added to, the aircraft, and which is alleged to have caused such death, injury, or damage, after the applicable limitation period beginning on the date of completion of the replacement or addition.

GARA § 2(a), Pub. L. No. 103-298, 108 Stat. 1552 (1994), as amended Pub. L. No. 105-102, § 3(e), 111 Stat. 2215 (1997) (codified at 49 U.S.C. § 40101 note (1997)). Under GARA, "the term 'limitations period' means 18 years with respect to general aviation aircraft[3] and the components, systems, subassemblies, and other parts of such aircraft." Id. at § 3(3).

GARA provides two alternative trigger dates for the commencement of the 18-year repose period. The first trigger date occurs when the manufacturer delivers "the aircraft" to the first purchaser or lessee. Id. at § 2(a)(1)(A). The second trigger date (commonly referred to as the "rolling trigger date") occurs when a "new" component replaces an existing component on the aircraft, if the new component is alleged to have caused an accident. Id. at § 2(a)(2).

The parties in this case dispute which event triggered the running of the GARA repose period. Defendants argue that the sale of Aircraft 550-0653 on October 30, 1990, with Actuator 339 installed, triggered the commencement of the repose period. Plaintiffs argue that the repose period was not triggered until Aircraft 560-0150 was

---

[3] "For the purposes of [GARA], the term 'general aviation aircraft' means any aircraft for which a type certificate or an airworthiness certificate has been issued by the Administrator of the Federal Aviation Administration, which, at the time such certificate was originally issued, had a maximum seating capacity of fewer than 20 passengers, and which was not, at the time of the accident, engaged in scheduled passenger-carrying operations." GARA § 2(c).

ORDER - 4

first sold by Cessna on December 30, 1991, or alternatively, when Actuator 339 was first installed on Aircraft 560-0150 in April 2007.

### 1. GARA's First Triggering Provision

GARA's first triggering provision begins the repose period upon the delivery of "the aircraft." GARA § 2(a)(1)(A). Plaintiff argues that the relevant aircraft is Aircraft 560-0150, which was first sold and delivered on December 30, 1991, less than 18 years before the accident on August 17, 2009. Specifically, plaintiff notes that GARA uses the term "the aircraft" immediately following a reference to the "general aviation aircraft:"

> . . . no civil action for damages for death or injury to persons or damage to property arising out of an accident involving a **general aviation aircraft** may be brought against the manufacturer of **the aircraft** . . .

GARA § 2(a) (emphasis added). Therefore, plaintiff argues that when the statute refers to "the aircraft" that term is synonymous with "general aviation aircraft." See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 114-15 (2001) ("[W]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words."). Plaintiff contends that its construction of the statute is bolstered by GARA's use of the definite article ("the aircraft"), as opposed to the indefinite article ("an aircraft"), because the use of the definite article suggests that Congress intended for "the aircraft" to mean the "general aviation aircraft." See Flandreau Santee Sioux Tribe v. United States, 197 F.3d 949, 952 (8th Cir. 1999) ("It would be extending liberality to an unwarrantable length to confound the articles 'a'

ORDER - 5

and 'the' [sic]  The most unlettered persons understand that 'a' is indefinite, but 'the' refers to a certain object.").  Applying plaintiff's construction, the period of repose would commence on the date that the "general aviation aircraft" was first delivered.  There is no dispute that the only "general aviation aircraft" at issue in this case is Aircraft 560-0150, because it was the aircraft involved in the accident on August 17, 2009.  See GARA § 2(c) (defining "general aviation aircraft" as aircraft that was "not, at the time of the accident, engaged in scheduled passenger-carrying operations.") (emphasis added); see also Croman Corp. v. Gen. Elec. Co., 2006 WL 3201099, *5 (E.D. Cal. 2006) ("[W]hen determining whether an aircraft meets the definition of a general aviation aircraft, the relevant aircraft is the accident aircraft, not other aircraft[] . . . .") (emphasis added).  Accordingly, plaintiff argues that the repose period was triggered upon delivery of Aircraft 560-0150 in December 1991, less than 18 years before the accident.

However, "the aircraft" in GARA § 2(a)(1) is not synonymous with "general aviation aircraft," because an aircraft is not a general aviation aircraft until after it has been in an accident.  Estate of Kennedy v. Bell Helicopter Textron, Inc., 283 F.3d 1107, 1112 (9th Cir. 2002) ("Under GARA, an aircraft cannot fulfill the definition of general aviation aircraft until an accident occurs.").  Thus, when "the aircraft" is first delivered, thereby triggering the repose period under GARA § 2(a)(1), it is not a "general aviation aircraft."

Instead, when the case involves components that have been removed from one aircraft and installed on another, the relevant aircraft for purposes of GARA's first triggering provision is the aircraft in which the components were originally installed. For example, in Croman Corp., 2006 WL 3201099, the plaintiff purchased a non-general aviation aircraft from defendant General Electric ("GE") in 1977. Id. at *2. GE also manufactured several of the aircraft's components, including the engine and fuel manifold. See id. at *4. The sale of the aircraft, engine, and manifold took place outside of GARA's 18-year repose period. Id. at *2. Thereafter, plaintiff removed the engine and fuel manifold from the first aircraft, and reinstalled the components on another aircraft that was subsequently involved in an accident. Id. at *4. The plaintiff argued that GE was not entitled to the protection of GARA's 18-year repose period because the components that caused the crash were first installed and delivered as part of an aircraft that could not be classified as a general aviation aircraft (because the original aircraft was not the aircraft involved in the subsequent accident). Id. The court rejected plaintiff's argument, holding that "the limitation period for GE's engine and fuel manifold is also triggered by their initial delivery to the purchaser, even if the aircraft in which they were first installed was not considered a general aviation aircraft." Id. (emphasis added). Accordingly, under GARA's first triggering provision, the relevant aircraft is Aircraft 550-0653, the aircraft in which Actuator 339 was originally installed.

### 2. GARA's Second Triggering Provision

In the alternative, plaintiff argues that GARA's rolling provision applies, which commences the repose period on the date work is completed on the installation of a new component, system, subassembly or other part to replace a preexisting part. GARA § 2(a)(2). Thus, plaintiff argues that the repose period commenced on April 2, 2007, when Actuator 339 was installed as a replacement part on Aircraft 560-0150.

The overhaul of a component does not restart the repose period as to the manufacturer. See Brewer v. Dodson Aviation, 2006 WL 3231974 (W.D. Wash. 2006) (holding that GARA's rolling provision did not renew the repose period as to the manufacturer when a component is overhauled and reinstalled on the aircraft); see also Robinson v. Hartzell Propeller, Inc., 326 F. Supp. 2d 631, 663 (E.D. Pa. 2004) ("If every time a critical component was overhauled, or even replaced, the statute of repose began anew thus permitting an individual to sue for a design flaw, then the manufacturer of the aircraft would never be afforded the protection of the statute of repose.") (quoting Butchkosky v. Enstrom Helicopter Corp., 855 F. Supp. 1251 (S.D. Fla. 1993)).[4] Therefore, the overhaul of Actuator 339 performed by Midwest Jet

---

[4] Plaintiff argues that this case is distinguishable from the overhaul cases cited by defendants because those cases involved the removal and overhaul of a component from an aircraft, followed by reinstallation of the overhauled component on the same aircraft. Conversely here, the relevant component (Actuator 339) was removed from one aircraft, overhauled, and installed on a different aircraft as a replacement part. Plaintiff argues that the distinction is important because when GARA's rolling provision describes the installation of a "new component" it is referring to a

Corporation did not restart the repose period as to the defendants.  GARA's rolling provision does not apply, and the repose period commenced under GARA's first triggering provision when Cessna first delivered Aircraft 550-0563 in October 1990, more than eighteen years before the accident at issue in this case.  As such, plaintiff's claims are barred by GARA's statute of repose.

### III.     CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion for summary judgment, docket no. 25, and DISMISSES plaintiff's claims with prejudice.

IT IS SO ORDERED.

DATED this 29th day of April, 2011.

_____
Thomas S. Zilly
United States District Judge

---

"replacement component," i.e. a component that is new to the aircraft and replaces an existing component, rather than a newly manufactured component.  Plaintiff only cites one case in support of this contention.  Wright v. Bond-Air, Ltd., 930 F. Supp. 300, 303 n.5 (E.D. Mich. 1996).  Plaintiff's reliance on Wright is misplaced.  The brief description of GARA's rolling provision in that case was unnecessary to the court's holding and is not persuasive authority.  Moreover, to construe "new" to mean "different" would permit aircraft operators to restart the repose period against the manufacturer by installing used components on different aircraft, thereby thwarting the purpose of a statute of repose, which is to protect a manufacture who has done nothing since the original sale of the component.  Estate of Kennedy, 283 F.3d at 1111 (holding that a statute of repose, unlike a statute of limitations, "proceeds on the basis that it is unfair to make somebody defend an action long after something was done or some product was sold.  It declares that nobody should be liable at all after a certain amount of time has passed, and that it is unjust to allow an action to proceed after that.").

ORDER - 9